~~19.~~93. Those facts do not by ~~Lyft, another provider of point-to-point consumer transportation.~~ themselves prove every ultimate use of the money. They do show that Davidian's description was incomplete and that downstream bank and mortgage records are necessary to test it.

~~20. On information and belief, Davidian did not disclose any intention to use funds that he was requesting from Retail Capital to start, or become an investor in, a business unrelated to his furniture business.~~

~~21. On information and belief, Retail Capital would not have loaned Davidian the money, had it been informed of Davidian's true intentions for the use of the funds.~~

~~22. The above-described conduct is consistent with an intent not to repay at the time of borrowing, which constitutes fraud under § 523(a)(2)(A).~~

~~*C. The Infusion of Ill-Gotten Gains into the Homestead*~~

~~*On information and belief, Davidian invested these fraud-tainted funds into improvements or equity-enhancing expenditures relating to the*~~ *E. The Property, Homestead Exemption, and Tracing*

~~23.~~ The real property ~~located at~~ at issue is commonly known as 8517 Marklein Avenue, North Hills, ~~CA 91343 ("the Property").~~

94. California ~~law is clear that fraud-tainted funds cannot be shielded by~~ 91343, together with the legal description in Los Angeles County Instrument No. 2019-0251159 (the "Property").

~~24.~~ Davidian claims a homestead exemption~~. Judicial authority holds:~~

a)95. "A homestead may … be successfully attacked … where money fraudulently obtained … is invested in and constitutes part of the homestead." *Duhart v. O'Rourke*, 99 Cal. the Property.App. 2d 277, 280 n.1 (1950).

b) A debtor "could not make a void title good by filing a declaration of homestead." *Ohio Electric Car Co. v. Duffet*, 48 Cal. App. 674, 679 (1920).

c) Courts will not "preserve to [a debtor] the fruits of the fraud," nor permit one to "reap the fruit of fraud." *Parker v. Riddell*, 41 Cal. App. 2d 908, 915–16 (1940).

d) "Courts have added those cases where money has been obtained by fraud and used to acquire the homestead." *Schoenfeld v. Norberg*, 267 Cal. App. 2d 496, 498–99 (1968).

e) Fraudulently obtained funds traced into a homestead render the exemption ineffective. *Nicolos v. Grover*, 186 Cal. App. 3d 858, 861–63, 875 (1986).

f) Under Cal. Civ. Code § 2224, "[o]ne who gains a thing by fraud … is … an involuntary trustee of the thing gained." This applies equally in bankruptcy via constructive trust doctrine, as recognized in *In re Golden Triangle Capital, Inc.*, 171 B.R. 79 (B.A.P. 9th Cir. 1994).

25. Thus, the underlying debt is not only nondischargeable; the proceeds of the fraud also give rise to equitable interests enforceable against the Property.

96. Roberts timely objected to the claimed amount of the homestead exemption — DE #19-1 — and asked the Court to defer a ruling exemption on November 7, 2025 in the amount ofmain bankruptcy case.

26.97. The objection expressly invoked 11 U.S.C. § 522(o), alleged that fraudulently obtained or otherwise nonexempt value had been directed into the exemption pending resolution ofhomestead during the claims in statutory ten-year period with the required intent, and requested coordination with this adversary proceeding.

27. At the hearing on January 9, 2026, the Court stated that one or more of the claims for relief in the original Complaint were duplicative of Roberts' objection to the exemption, and ordered that the latter proceeding be subsumed under and litigated as part of this action.

*D. Davidian Allegedly Took Out a Second, Larger Loan from an Insider at the Time of the Default*

28. On March 21, 2019, at Recording #2019-0251159, a Deed of Trust issued by Davidian as Trustor was recorded with the Los Angeles Registrar-Recorder in the amount of $300,000, with Narine Stepanyan as the Trustee and Beneficiary. Under "WHEN RECORDED MAIL TO," the Deed of Trust states "Narine Stepanyan, 8517 Marklein Avenue, North Hills CA 91343, the same address as the Davidian residence for which he claimed the homestead exemption, and where he still lives.

98. The alleged debt for which the Deed of Trust allegedly provided securityThe exemption objection remains pending.

99. The Court has calendared proceedings concerning the objection concurrently with status proceedings in this adversary case. Roberts does not allege that the presently located written orders independently adjudicated the objection or formally consolidated it into this action.

100. On information and belief, during the ten years before the September 12, 2025 petition date, Davidian disposed of nonexempt property with intent to hinder, delay, or defraud one or more creditors and used some of that value to increase his interest in the Property.

101. The possible mechanisms include payment of mortgage principal and capital improvements that increased the Property's value.

102. Roberts also alleges, as a fact-dependent causation theory rather than a settled rule of tracing, that fraudulently obtained funds may have paid other obligations in an integrated transaction that freed otherwise available income for contemporaneous mortgage-principal payments or capital improvements.

103. Roberts is in the process of subpoenaing historical mortgage-servicing, Wells Fargo, and other third-party records to determine whether, when, and in what amount those events occurred.

104. Any § 522(o) reduction sought will be limited to the value of Davidian's interest in the Property actually proved attributable to a qualifying disposition.

105. Mortgage principal reduction may increase equity by the amount of principal paid. Expenditures for improvements will be measured by value actually added, not automatically by their cost.

106. Roberts does not seek to treat ordinary interest, taxes, insurance, utilities, or maintenance as an automatic increase in homestead value.

*F. The Stepanyan Deed of Trust*

107. Davidian signed a deed of trust that states it was made on March 13, 2019.

108. Davidian's signature was acknowledged by ~~Davidian but~~a notary on March 12, 2019.

109. Davidian caused the instrument to be recorded on March 21, 2019 as Los Angeles County Instrument No. 2019-0251159 (the "Stepanyan Deed of Trust").

110. The Stepanyan Deed of Trust names Stepanyan as both trustee and beneficiary. Stepanyan did not sign it.

111. The Stepanyan Deed of Trust recites that it secures a separate promissory note "of even date" in the principal amount of $300,000, plus qualifying later advances.

112. The Stepanyan Deed of Trust does not itself show what amount Stepanyan actually advanced, what remained owing on March 21, 2019, or what remains owing now.

113. No copy of the recited promissory note has been produced to Roberts.

114. No accounting, advance schedule, repayment history, maturity date, interest rate, installment schedule, bank record, cancelled check, receipt, tax record, or communication substantiating the $300,000 amount has been produced to Roberts.

115. In written discovery responses that were served without Davidian's signature, Davidian stated that Stepanyan supplied mostly cash and some checks from approximately 2009 through 2012.

116. Davidian stated that he could not repay her and therefore decided years later to give her a lien because she otherwise might sue him.

117. That account, if credited, does not establish that no debt existed.

118. It does raise concrete questions about how undocumented transfers made seven to ten years earlier were fixed at exactly $300,000, whether a note "of even date" was actually executed, what terms governed the obligation, and what amount remained enforceable when the deed was ~~described~~recorded and when the petition was filed.

~~29.~~119. Davidian's bankruptcy Schedule D lists the Stepanyan claim in an "Unknown" amount, describes it as ~~Disputed in his original petition, DE #1 at 23 ("~~a "Disputed Lien (Complaint for Quiet Title~~) Recorded 3/21/2019").~~)" recorded March 21, 2019, and marks the claim disputed.

~~30. As of January 8, 2026, Los Angeles Superior Court records did not contain a lawsuit filed by Davidian against Stepanyan for quiet title or for any other cause of action.~~

120. ~~Narine~~ The same Schedule D lists Retail Capital's $108,260.60 judgment lien against the Property as recorded in April 2025.

121. Roberts's assigned judgment-lien interest is directly affected because any amount validly secured by the earlier-recorded Stepanyan Deed of Trust reduces the equity available to satisfy Roberts's judgment.

122. The First Amended Complaint placed Davidian on notice that the enforceability and effect of the Stepanyan Deed of Trust were disputed, but did not join Stepanyan.

123. Roberts reasonably expected Davidian to produce the note and records that would establish the obligation's existence and amount and support the lien's validity and extent.

124. If those records had resolved the issue in Stepanyan's name appears as the same person who signed the proof of service of favor, the Court could have left her interest undisturbed without adjudicating relief against her.

125. Davidian's Answer on Roberts,response that he has no such records makes Stepanyan's participation necessary so she has a fair opportunity to produce any note, accounting, or payment evidence she possesses before the apparent interest evidenced by the deed is adjudicated.

126. The recorded deed's recital of a contemporaneous $300,000 note did not disclose that Davidian would later say the alleged advances were undocumented cash and occasional checks from 2009 through 2012.

31.127. Roberts acquired the judgment and judgment-lien interest in 2025 and learned through the bankruptcy schedules and ensuing investigation that Davidian himself treated the Stepanyan lien and amount as to the original Complaint in this actiondisputed.

32. Narine Stepanyan's address is given on the proof of service as 8517 Marklein Avenue, North Hills CA 91343, again the same address as Davidian's home address, and the same address given for Ms. Stepanyan in DE #1 at 23, cited above.

33. It defies logic that a bona fide creditor would do Davidian the favor of serving as his process server at the same time that he is disputing the validity of a six-figure debt to that creditor.

34. The above facts support a reasonable inference that Ms. Stepanyan is an "insider" with respect to Davidian.

35. The above facts support a reasonable inference that Stepanyan might have colluded with Davidian to create a sham encumbrance on his homestead with the intent to frustrate and defeat the genuine creditor Retail Capital.

36. If, on the other hand, the Stepanyan loan was genuine, that creates a need for an explanation of why Davidian used none of the funds from that loan to continue repaying the Retail Capital loan.

37. In conferral with Roberts, Davidian never mentioned the Stepanyan "loan," and certainly offered no explanation as to what happened to the additional funds that that loan would have given Davidian to work with.

*E. Davidian Provided Untenable Explanations for the Loss of Assets at the Time of the Default*

38. Under penalty of perjury, Davidian blamed the COVID-19 pandemic, which occurred in 2020, for his failure to continue making the agreed loan repayments to Retail Capital in 2019:

> 3. I borrowed money from the original creditor to support my business at the time. I had a DBA business called GS Custom Bar & Furniture. I would make custom

furniture for trucks, restaurants and bars. During the pandemic, my business stopped, and client orders dried up and led to me practically losing my business.

*Declaration of Debtor in Support of Opposition to Objection*, main case #25-bk-11688-MB, DE #26, 5:7-10.

39. Davidian further blamed the emptying and closure of his Bank of America account on Bank of America: "The bank for the business account informed me that the account would be closed and wrote the final checks to vendors. The account was closed by the bank the next month." *Id.*, 5:11-13. However, he never explained why Bank of America would want to close the account of a customer with nearly $300,000 in the account, why the checks were written in round numbers, where the Bank of America checks that he wrote to himself and to the fictitious name of his furniture business totaling $60,000 were deposited, or why none of that money was used to continue making the agreed loan repayments to Retail Capital.

40. The Bank of America document that Davidian provided in alleged support for this explanation did not say that the account would be closed, and the document was dated after all the round-numbered withdrawals had already reduced the account balance to zero.

41. In the same Declaration, Davidian further stated "I used [the Retail Capital loan] on the business. The money was paid to vendors." 5:13. However, among the checks in questions was a $10,000 check to himself as payee, and two checks to the fictitious name of his furniture business totaling $50,000. Moreover, checks to NB Transportation and Fly Venture Corporation, mentioned in para 16 above, totaled $78,170.

42. Not only did Davidian fail to explain the loss of the Retail Capital loan money, but as stated above he also failed to explain the loss of the $300,000 allegedly loaned to him by Stepanyan contemporaneously with the Retail Capital default.

128. Roberts did not discover, and through reasonable diligence could not have discovered, the alleged absence of the recited note and supporting records until Davidian supplied his 2026 discovery account and production.

129. To the extent the Sixth Claim seeks relief on the ground of fraud or mistake, the relevant facts are pleaded as having been discovered within the three years preceding this amendment for purposes of California Code of Civil Procedure § 338(d). Roberts does not allege that § 338(d) governs every theory or remedy pleaded in that claim.

130. Alternatively, this controversy over the obligation's existence and amount, the Stepanyan lien's validity and extent, and its effect on Roberts's enforcement rights became concrete when Roberts recorded his judgment lien and Davidian placed the Property, exemption, and disputed Stepanyan lien before this Court.

131. Roberts does not allege, without evidence, that Stepanyan participated in fraud or inequitable conduct.

132. Roberts does not seek avoidance of the Stepanyan Deed of Trust under 11 U.S.C. §§ 544 or 548.

## IV. FIRST CLAIM FOR RELIEF

**~~*NONDISCHARGEABILITY UNDER*~~Nondischargeability Under 11 U.S.C. § 523(a)(2)(A)—**
~~*(Fraudulent Inducement; False Pretenses; Actual Fraud)*~~

*Against Davidian*

~~43.~~133. Roberts ~~realleges all preceding~~incorporates paragraphs 1 through 93 as though fully set forth ~~herein~~here.

~~44. To establish nondischargeability under § 523(a)(2)(A), a creditor must prove:~~

~~a. misrepresentation, fraudulent omission, or deceptive conduct;~~

134. ~~knowledge of~~ Davidian obtained Retail Capital's money through false pretenses, false promises, a materially misleading half-truth, and fraudulent omissions concerning his concurrent financing activity, concrete plan for additional funding, intended use and disposition of proceeds, and then-present intent to comply with the Agreement.

135. When Davidian spoke about existing funding, acknowledged the prohibition and default consequence, promised compliance, and warranted that his information was complete, he had a duty to disclose the additional facts necessary to make that partial account not misleading. See *Apte v. Japra (In re Apte)*, 96 F.3d 1319, 1323–24 (9th Cir. 1996).

136. The omission itself is not a "statement respecting financial condition." Roberts does not rely under § 523(a)(2)(A) on Item E alone as an affirmatively false written financial-condition statement. See *Oregon v. Mcharo (In re Mcharo)*, 611 B.R. 657, 661–62 (B.A.P. 9th Cir. 2020).

~~b.~~ Davidian knew the omitted facts and the falsity~~;~~

c. intent to of his promise or present intention, and intended to deceive;

d. justifiable reliance; and

e. resulting damage.

45.137. At the time Davidian obtained funds from Retail Capital, he never intended to repay them. His conduct immediately after receipt—making one payment, attempting a dishonored second payment, and then liquidating $276,070 in irregular round-number checks—demonstrates a preconceived plan not to fulfill the payment obligations.

46. The Ninth Circuit recognizes that fraudulent intent may be inferred from circumstantial evidence, particularly where the debtor's conduct is inconsistent with an honest business purpose.

47. Davidian's use of fraudulently obtained funds to enhance equity in his homestead further supports the inference of intent to deceive.

138. Roberts (through Intent is supported by the near-simultaneous other funding, Davidian's recorded acknowledgment, the Agreement's completeness warranty, the rapid post-funding disbursements, the cash withdrawal that reduced the Designated Account to zero, and failure after one payment.

48.139. Retail Capital) justifiably relied on Davidian's representations regarding his intended use of funds and ability and intent to repay, promises, warranty, omissions, and recorded confirmations in funding the loan.

140. Roberts (through Retail Capital) suffered damages equalThe deception proximately caused Retail Capital's loss and the debt reduced to the December 10, 2019 judgment.

141. Because the assignments transferred Retail Capital's rights, Roberts may pursue the assigned nondischargeability claim based on Retail Capital's reliance. See *Boyajian v. New Falls Corp. (In re Boyajian)*, 564 F.3d 1088, 1091–93 (9th Cir. 2009).

49. The assigned judgment debt and all ancillary liability traceable to the unpaid balance of the debt.

50.142. The debt is thereforefraud are nondischargeable under 11 U.S.C. § 523(a)(2)(A). See *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998).

**V. SECOND CLAIM FOR RELIEF**

***NONDISCHARGEABILITY UNDER*** **Nondischargeability Under 11 U.S.C. § 523(a)(6) – *(Willful and Malicious Injury)*Based on Conversion**

*Against Davidian*

51.143. Roberts realleges the precedingincorporates paragraphs 1 through 93 and 133 through 142 as though fully set forth hereinhere.

144. Arizona law governs the primary conversion theory under the Agreement's choice-of-law clause. California conversion is pleaded in the alternative under Federal Rule of Civil Procedure 8(d), incorporated by Federal Rule of Bankruptcy Procedure 7008.

145. The ~~Ninth Circuit's standard~~Agreement's security grant attached and was enforceable against Davidian as to the collateral in which he had rights, including deposit accounts, instruments, and identifiable proceeds. See Ariz. Rev. Stat. § 47-9203(A)–(B).

146. Roberts does not allege that filing the UCC financing statement perfected a security interest in the Designated Account as original collateral, or that Retail Capital had control of that account. See Ariz. Rev. Stat. §§ 47-9312(B)(1), 47-9314(A)–(B), and 47-9104.

147. This count does not depend on a claim that Bank of America was obligated to honor instructions from Retail Capital under Arizona Revised Statutes § 47-9607(A)(4) or (5).

148. It concerns Davidian's own post-default dominion over identifiable cash, instruments, and traceable proceeds in violation of the Agreement's collateral restrictions and § 20 duty to hold proceeds of unauthorized dispositions in trust and deliver them immediately.

149. If the fraud and materially incomplete warranty alleged in the First Claim are proved, an Event of Default under Agreement § 8.1(e) existed no later than the Effective Date.

150. Additional Events of Default occurred when Davidian violated any proven use, collateral, account, or prohibited-financing covenant.

151. The specifically challenged property includes the $35,000 March 6 instrument payable to Davidian's DBA, its traceable proceeds, the $28,805.30 cash withdrawn on March 15, and any other identifiable post-default collateral or proceeds proved through the Wells Fargo and related records.

152. Roberts does not include the two March 1 checks totaling $25,000 as post-Agreement conversions.

153. On information and belief, Davidian intentionally transferred, withdrew, retained, or redirected the specifically identifiable collateral and proceeds without Retail Capital's consent, without holding or delivering unauthorized-disposition proceeds as required, and without accounting for their ultimate use.

154. Under Arizona law, conversion requires wrongful dominion over identifiable personal property inconsistent with another's rights and an immediate right to possession. Money is actionable when it is identifiable and subject to an obligation to treat it in a specific manner. *Case Corp. v. Gehrke*, 208 Ariz. 140, 143-45 ¶¶ 11, 17-24, 91 P.3d 362, 365-67 (Ct. App. 2004).

155. The Agreement's default remedies, collateral restrictions, and express trust-and-delivery obligation supplied Retail Capital's immediate rights in the identifiable property and proceeds pleaded here.

156. Alternatively, if California law governs, the same facts establish wrongful dominion over specifically identifiable property inconsistent with Retail Capital's ownership or immediate possessory rights, causing damage. See *Farmers Insurance Exchange v. Zerin*, 53 Cal. App. ~~willful and malicious~~ 4th 445, 451–52 (1997).

157. Davidian's conduct was not merely a failure to pay. It was the intentional exercise of dominion over the specified collateral and proceeds after obtaining the loan through the alleged preconceived deception and while knowing that stripping those assets would injure Retail Capital's contractual and secured rights.

52.158. Davidian acted with the subjective purpose of causing that injury is articulated in or actual knowledge that injury was substantially certain. The conduct was wrongful, intentional, necessarily caused injury, and lacked just cause or excuse. See Carrillo v. Su (In re Su), 290 F.3d 1140, 1144–47 (9th Cir. 2002).

53. Under *Su*, "willful" requires a subjective intent to injure or a subjective belief that injury is substantially certain to occur. "Malicious" requires conduct that is wrongful and without just cause or excuse, done intentionally.

54. Davidian's conduct satisfies both elements:

a. Willful: By diverting the lender's funds for non-business purposes, and/or starting a business or investing in a business that was different than the business in which he had substantial experience — immediately draining the account, and refusing repayment — Davidian knew with substantial certainty that he was causing financial injury.

b. Malicious: His actions were intentional, wrongful, and "without just cause or excuse." (*Su*, *supra*.).

159. Essentially the same evidence adduced here, establishing fraud under § 523(a)(2)(A), also supports a finding ofRoberts acknowledges that conversion is not automatically willful and

malicious and that contract breach alone is insufficient. See Peklar v. Ikerd (In re Peklar), 260 F.3d 1035, 1037–39 (9th Cir. 2001); Lockerby v. Sierra, 535 F.3d 1038, 1040–42 (9th Cir. 2008).

55. The portion of the assigned debt proved to have resulted from the willful and malicious injury under § 523(a)(6).

56. Roberts (through Retail Capital) suffered damages equal to the unpaid balance of the debt.

57.160. The debt owed to Roberts is thereforeconversion is nondischargeable under § 523(a)(6). Roberts does not allege that the entire judgment is automatically nondischargeable under this subsection.

## VI. THIRD CLAIM FOR RELIEF

*ESTABLISHMENT OF CONSTRUCTIVE TRUST PERTAINING TO FUNDS ACQUIRED THROUGH FRAUD OR WILLFUL AND MALICIOUS INJURY, AND PLACED INTO THE HOMESTEAD THROUGH MORTGAGE OR CONSTRUCTION IMPROVEMENTS, AND REDUCTION IN AMOUNT OF HOMESTEAD EXEMPTION IN THE SAME AMOUNT*

**Reduction of Homestead Exemption Under 11 U.S.C. § 522(o)**

*Against Davidian*

58.161. Roberts realleges the precedingincorporates paragraphs 1 through 106 and 133 through 142 as though fully set forth hereinhere.

59. The debtor obtained money through fraud or other wrongful conduct.

60. Those funds were used to acquire, improve, or pay down the homestead.

61. A traceable connection exists between the ill-gotten funds and the homestead equity.

62. Equity demands that the debtor not be permitted to "reap the fruits of the fraud."

63. Equity further demands not only that the debtor's exemption be reduced by the amount of the ill-gotten gains, but also that any such funds placed into the homestead be disgorged to Roberts along with the mortgage interest "saved".

64. To the extent that the ill-gotten funds were invested elsewhere than the homestead, those funds and their gains must also be disgorged to Roberts.

162. During the ten years before the petition date, Davidian disposed of property that was nonexempt.

163. Davidian made one or more such dispositions with actual intent to hinder, delay, or defraud a creditor.

164. On information and belief, some portion of the value disposed of was used to increase the value of Davidian's interest in the Property, including through mortgage-principal reduction or capital improvements.

165. The amount of the increase attributable to a qualifying disposition remains unliquidated pending the third-party bank, mortgage-servicing, and property records.

166. Under § 522(o), Davidian's claimed homestead exemption must be reduced only to the extent of the increase actually proved attributable to each qualifying disposition.

167. Roberts does not seek an equitable surcharge untethered to a Bankruptcy Code provision. See Law v. Siegel, 571 U.S. 415, 421, 425–27 (2014).

168. Roberts raised this theory expressly and timely in his November 7, 2025 exemption objection.

## ~~VII.~~ VIII. FOURTH CLAIM FOR RELIEF

**Constructive-Trust Relief Under California Law and Determination of the Estate's Interest Under 11 U.S.C. § 541(d)**

*Against Davidian and McBeth Solely in Her Official Capacity*

169. Roberts incorporates paragraphs 1 through 142 and 161 through 168 as though fully set forth here.

170. This claim is pleaded separately from, and in the alternative to, the equitable-lien claim below.

171. California Civil Code §§ 2223 and 2224 recognize an involuntary trust where a person wrongfully gains or detains specific property to which another is entitled. A constructive trust requires an identifiable res, Roberts's right to that res, and Davidian's wrongful acquisition or detention of it. See *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990-91 (1995).

172. The alleged fraud supplies the underlying wrong. The constructive trust is the requested proprietary remedy, not a freestanding tort.

173. Roberts owns Retail Capital's assigned proprietary rights arising from that wrong.

174. The 2019 judgment fixed Davidian's personal liability. It did not adjudicate beneficial ownership of any specific value later proved traceable into the Property or the effect of that interest under § 541(d) upon the 2025 bankruptcy filing.

175. On information and belief, some money obtained through the fraud, or an identifiable substitute for that money, is directly and strictly traceable into mortgage-principal reduction or capital improvements that increased the Property's value.

176. Roberts bears the burden to identify and strictly trace that value. See *Mitsui Manufacturers Bank v. Unicom Computer Corp. (In re Advent Management Corp.)*, 104 F.3d 293, 295–96 (9th Cir. 1997).

177. Roberts does not allege that the "freed-up funds" theory, without traditional tracing to an identifiable res or substitute, satisfies constructive-trust tracing.

178. The amount, if any, is unliquidated pending third-party records.

179. To the extent a constructive-trust interest is established under applicable nonbankruptcy law, 11 U.S.C. § 541(d) limits the estate to the title and interest Davidian held at filing.

180. Section 541(d) supplies the bankruptcy consequence of the proven state-law interest; it is not pleaded as an independent cause of action.

181. California law is pleaded because the requested remedy concerns beneficial value in California real property. If the Agreement's Arizona choice-of-law clause governs the antecedent restitutionary question, Roberts pleads materially corresponding Arizona restitution and constructive-trust principles in the alternative.

182. The Court should determine the strictly traceable value, if any, recognize the corresponding constructive-trust interest, and determine the resulting estate interest under § 541(d), without double recovery.

## IX. FIFTH CLAIM FOR RELIEF

**Equitable-Lien Relief Under California Law**

*Against Davidian and McBeth Solely in Her Official Capacity*

183. Roberts incorporates paragraphs 1 through 142 and 161 through 181 as though fully set forth here.

184. This claim is pleaded in the alternative to constructive-trust relief.

185. An equitable lien is a charge against specific property securing payment of an obligation. It would leave the Property in the estate subject to that charge rather than establish Roberts's beneficial ownership of the Property under § 541(d). See *Farmers Insurance Exchange v. Zerin*, 53 Cal. App. 4th 445, 453–54 (1997).

186. On information and belief, fraudulently obtained money, identifiable substitutes, or value causally attributable to those funds directly reduced mortgage principal or paid for capital improvements that increased the Property's value.

187. To the extent proved, permitting Davidian to retain that specific increase while invoking the homestead against the victim and assignee of the underlying fraud would unjustly enrich him at Roberts's expense.

188. The Agreement did not identify the Property as collateral. Roberts therefore does not seek an equitable lien based merely on the unpaid debt or a bare promise to pay.

189. Roberts seeks a lien only to the extent a specific causal and equitable nexus is proved between the wrongful acquisition of funds and value added to the Property.

190. The integrated use of fraudulently obtained funds to pay other obligations may be circumstantial evidence of that causal nexus if it is proved to have freed contemporaneous funds actually applied to mortgage principal or capital improvements. Roberts does not present indirect economic benefit alone as conclusive tracing.

191. California law is pleaded because the requested lien would encumber California real property. If the Agreement's Arizona choice-of-law clause governs the antecedent restitutionary question, Roberts pleads materially corresponding Arizona equitable-lien and restitution principles in the alternative.

192. The Court should impose an equitable lien only in the amount proved and should prevent duplication with relief under § 522(o) or the constructive-trust theory.

## X. SIXTH CLAIM FOR RELIEF

~~*REVOCATION OF DISCHARGE FOR FAILURE TO PRESERVE RECORDS – 11 USC*~~**Determination of Validity, Amount, Priority, and Extent of Stepanyan Deed-of-Trust Lien; Cancellation to the Extent Proven Invalid**

*Against Davidian, Stepanyan, and McBeth Solely in Her Official Capacity*

193. Roberts incorporates paragraphs 1 through 25 and 94 through 132 as though fully set forth here.

194. Under California law, a deed of trust is security for an underlying obligation and cannot secure more than the enforceable obligation it supports. See Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226, 1235–36 (1995).

195. The Stepanyan Deed's reference to a $300,000 note is evidence to be considered. It does not conclusively establish that $300,000 was advanced, that a separate note was executed, or that $300,000 remained owing at recording or remains owing today.

196. Davidian's signed deed may constitute a written acknowledgment or promise with legal consequences under California Code of Civil Procedure § 360. Roberts does not ask the Court to disregard that issue.

197. The enforceable effect of any acknowledgment depends on the instrument, the obligation acknowledged, and the surrounding facts, including the missing note and accounting.

198. The presently known facts support a reasonable inference that the deed may materially exceed the enforceable obligation or may secure no enforceable obligation: Davidian describes mostly cash and occasional checks from 2009 through 2012; the deed recites a note "of even date"; no note or accounting has been produced; and Davidian himself scheduled the amount as unknown and the lien as disputed.

199. Those facts do not establish the ultimate result. Stepanyan is joined so that she may produce contrary evidence and be heard before her apparent interest is adjudicated.

200. An actual controversy exists concerning the underlying obligation's existence and amount, the lien's validity and extent, and the relative priority between any property interest established under Claims Four or Five and any valid Stepanyan lien.

201. Leaving an invalid or overstated instrument of record would cloud the Property and seriously injure Roberts's enforcement rights.

202. Under California Civil Code § 3412, Roberts seeks cancellation only if the instrument is proved void or voidable as against his interests. Independently, Roberts seeks a determination limiting the lien to the amount, if any, legally secured.

203. Under Federal Rule of Bankruptcy Procedure 7001(b), Roberts seeks determination of the validity and extent of the lien purportedly imposed by Los Angeles County Instrument No. 2019-0251159 and the relative priority between any property interest established under Claims Four or Five and any valid Stepanyan lien. Under Rule 7001(i) and 28 U.S.C. §

2201, Roberts seeks related declaratory relief determining the existence and present amount of the enforceable obligation, if any, secured by that lien.

204. If the evidence proves a valid obligation in an amount less than $300,000, the lien should be limited to the amount legally secured.

205. If the evidence proves no enforceable obligation, the instrument should be cancelled and the lien reduced by 100 percent.

206. If the evidence proves the full obligation and lien valid, Roberts seeks no reduction merely because Davidian voluntarily executed the deed or because Stepanyan did not sign it.

207. Roberts does not seek equitable subordination under 11 U.S.C. § 510(c) or priority for his later judgment lien over a valid Stepanyan lien. If Claims Four or Five establish a property interest, Roberts seeks only the priority that applicable nonbankruptcy law assigns it.

208. The delayed-discovery and later-accrual facts in paragraphs 126 through 130 are incorporated as the basis for timeliness. Roberts does not rely solely on relation back under Federal Rule of Civil Procedure 15(c), made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7015.

## XI. SEVENTH CLAIM FOR RELIEF

**Denial of Discharge Under 11 U.S.C. § 727(a)(3)**

*Against Davidian*

65.209. Roberts realleges the precedingincorporates paragraphs 1 through 132 as though fully set forth hereinhere.

66.210. Davidian has concealed, destroyed, mutilated, falsified, or failed to keep or preserve certain recorded information, including books, documents, records, and papers, from which his financial condition orand material business transactions might have beenbe ascertained.

211. Such actMissing records include invoices, contracts, receipts, purchase orders, work orders, contemporaneous ledgers, source-and-use records, and downstream account records for the substantial March 2019 credits, the $251,070 in post-Agreement checks, the $28,805.30 cash withdrawal, and the transportation-associated payments.

212. The bank statements and check images identify immediate transfers. They do not show the economic purpose, ultimate recipient, resulting asset, or subsequent disposition of the money.

213. Missing records also include the note, advance records, accounting, and payment history for the presently asserted Stepanyan obligation and deed of trust.

214. The Stepanyan records concern a current $300,000 recorded encumbrance and are not rendered immaterial merely because Davidian says the underlying transfers occurred years earlier.

215. Davidian operated a business, obtained and moved substantial commercial funds, and entered multiple financing transactions. The magnitude and complexity of those transactions required more than unsupported recollection.

216. Retail Capital filed suit in August 2019. That pending and ensuing litigation gave Davidian an additional reason to preserve records concerning the transaction and disposition of funds.

217. Davidian has stated that older records were discarded, but has not supplied a transaction-specific justification adequate to permit his financial condition and business dealings to be ascertained.

218. The absence of the records prevents Roberts, the Trustee, and the Court from determining what assets were acquired, whether value remains in the Property or elsewhere, what obligation supports the Stepanyan Deed, and whether Davidian's sworn explanations are accurate.

~~67.~~219. Under all the circumstances, Davidian's failure to ~~act was~~ keep or preserve adequate records is not justified. His discharge should be denied under ~~all of the~~

~~circumstances of the case.~~§ 727(a)(3). See *Caneva v. Sun Communities Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761–63 (9th Cir. 2008).

## ~~VIII. FIFTH~~XII. EIGHTH CLAIM FOR RELIEF

### ~~*REVOCATION OF DISCHARGE FOR FAILURE TO EXPLAIN LOSS OF ASSETS –*~~Denial of Discharge Under 11 ~~*USC*~~U.S.C. § 727(a)(5)

*Against Davidian*

~~68.~~220. Roberts ~~realleges the preceding~~incorporates paragraphs 1 through 132 as though fully set forth ~~herein~~here.

221. Davidian ~~has failed~~possessed substantial assets in March 2019, including the $73,710 Retail Capital wire, the same-period $50,000 WebBank wire, $34,500 online advance, $38,204 Millennium Trust wire, and the preexisting Designated Account balance.

222. Within days, the Designated Account was reduced to zero through $276,070 in checks, other debits, and the $28,805.30 cash withdrawal.

223. To the extent Davidian used those funds for employees, supplies, contracts, payroll, inventory, equipment, or other business assets as represented, the resulting assets or their proceeds are also assets whose later loss or deficiency requires a satisfactory explanation.

224. Davidian's business continued for years after March 2019. His bankruptcy schedules state that GS Custom Bar & Furniture stopped operating in 2022 and list only small equipment and tools of modest value.

225. Davidian's general explanation that the money was paid to vendors, followed by a later pandemic business collapse, does not explain transaction by transaction what was acquired, what happened to the acquired value, why funds went to himself, his DBA, transportation-associated entities, and cash, or whether any value was transferred into the Property or another account.

226. The age of the 2019 transactions is a circumstance to consider, but the transactions remain connected to Davidian's 2025 financial condition because they allegedly funded a business that continued until 2022, may have produced assets or proceeds, and bear directly on his present Property and exemption claims.

227. For the reasons pleaded in paragraphs 221 through 226, Roberts alleges that Davidian once owned identifiable assets not too remote from the petition date, no longer owned those assets at filing, and has not satisfactorily, before determination of denial of explained their loss or deficiency. His discharge should be denied under this paragraph, a loss § 727(a)(5). See *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1205 (9th Cir. 2010).

## XIII. NINTH CLAIM FOR RELIEF

69. **Denial of** assets or deficiency of assets to meet his liabilities.

## IX.SIXTH CLAIM FOR RELIEF

**REVOCATION OF DISCHARGE FOR FALSE OATHS OR ACCOUNTS Discharge Under 11 USCU.S.C. § 727(a)(4)(A)**

*Against Davidian*

70.228. Roberts realleges the precedingincorporates paragraphs 1 through 132 as though fully set forth hereinhere.

229. EachOn Official Form 101, Part 3, question 12, filed September 12, 2025, Davidian answered "No" when asked whether he was a sole proprietor of Davidian's statementsany full- or part-time business.

230. In the Statement of Financial Affairs signed under penalty of perjury on September 5, 2025 and filed with the petition, Davidian identified "Uber / Turo Car Rental" as documenteda business existing from January 1, 2021 "to Current" and described himself as an Uber/Lyft driver and Turo rental business.

231. His Schedule I attachment likewise identified him as an Uber driver, and his expense schedule described "DBA Expenses (Uber Driver: Gas $900 / $100 Parking / Maintenance)."

232. Davidian personally knew whether he was then operating a sole-proprietor Uber/Turo business. The "No" answer and the contemporaneous "to Current" business disclosure cannot both provide a complete and accurate account without further explanation.

233. The discrepancy was material because it bore directly on current business activity, income, expenses, assets, records, and the Trustee's ability to investigate the estate.

234. On December 23, 2025, Davidian also submitted the declaration described in ~~Section E above~~paragraphs 85 through 93 under penalty of perjury to defeat Roberts's exemption objection.

235. In that declaration, Davidian presented the money as having been used in the business and paid to vendors, while omitting the checks to himself and his DBA, the $78,170 paid to transportation-associated entities, the $28,805.30 cash withdrawal, the account's reduction to zero before the second debit, and the fact that nonpayment began in March 2019 rather than during the pandemic.

236. Davidian knew the immediate payees, the cash withdrawal, and the timing of his own first and failed second payment.

237. In the context in which the declaration was offered, those omissions made the account materially misleading concerning the disposition of assets, the claimed exemption, and the asserted innocent explanation for nonpayment.

~~71.~~238. The pleaded oaths and omissions were made knowingly and fraudulently. Davidian's reckless indifference to the truth, considered with the surrounding facts and pattern of omission, supports the inference of actual fraudulent intent; recklessness is not

alleged as a substitute for that intent. See *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198–99 (9th Cir. 2010).

~~72. Each of Davidian's statements as documented in Section E above were made in or in connection with the case.~~

~~73. Each of Davidian's statements as documented in Section E above were false.~~

~~74. Each of Davidian's statements as documented in Section E above were made under oath.~~

239. The matters were material because they related to Davidian's business dealings, income, disposition of substantial assets, estate property, and claimed exemption.

240. Davidian's discharge should be denied under § 727(a)(4)(A). See Retz v. Samson (In re Retz), 606 F.3d 1189, 1196–99 (9th Cir. 2010).

241. No current discharge exists. Roberts does not presently seek revocation under 11 U.S.C. § 727(d)(1), and does not waive any revocation claim that may later arise if a discharge is entered and the requirements and time limits of 11 U.S.C. § 727(d) and (e) are satisfied.

## ~~X.~~ XIV. PRAYER FOR RELIEF

~~75.~~ WHEREFORE, ~~Plaintiff respectfully~~Roberts requests ~~that the Court enter~~ judgment:

~~a.~~A. Declaring the ~~debt owed to Plaintiff~~assigned judgment debt, postjudgment interest, and all ancillary liability traceable to the fraud nondischargeable under 11 U.S.C. §§§ 523(a)(2)(A~~) and 523(a)(6~~);

B. Imposing Declaring the portion of the assigned debt proved to have resulted from willful and malicious conversion nondischargeable under 11 U.S.C. § 523(a)(6);

C. Reducing Davidian's homestead exemption under 11 U.S.C. § 522(o) only to the extent of the increase in value of his interest in the Property proved attributable to each qualifying disposition;

D. Determining the identifiable value, if any, strictly traceable into the Property; recognizing an appropriate constructive--trust or interest under applicable nonbankruptcy law; and determining the estate's resulting interest under 11 U.S.C. § 541(d);

b.E. Alternatively, imposing an equitable lien on any fraud-tainted equity and proceedsthe Property only in the amount proved causally connected to fraudulently obtained funds or identifiable substitutes, without duplicative recovery;

c. Sustaining Roberts' objection to Davidian's claim of exemption in his homestead to the extent of fraud-tainted equity in the homestead;

F. RevokingDetermining the existence and amount of any enforceable obligation owed to Stepanyan; the validity and extent of the lien, if any, purportedly imposed by Los Angeles County Instrument No. 2019-0251159; and the relative priority between any property interest established under Claims Four or Five and any valid Stepanyan lien;

G. Reducing the amount of that lien to the extent it is proved invalid, up to 100 percent of the amount of the lien; limiting the lien to the amount, if any, legally secured; and, if the instrument is proved void or voidable as against Roberts, cancelling it under California Civil Code § 3412;

d.H. Denying Davidian a discharge under one or more of the claims alleged here under 11 USC11 U.S.C. §§ 727;(a)(3), (a)(5), and/or (a)(4)(A);

e.I. Awarding attorney'sRoberts allowable costs and all attorneys' fees and costs to the extent permitted byexpenses actually incurred and recoverable under Agreement § 10.13 and applicable contract or law; and

J. Providing that no relief is awarded personally against Trustee McBeth and that her participation is solely in her official representative capacity; and

f.K. Granting such other and further relief as the Court deems just and proper, without double recovery.

Dated this 20th day of January: September 21, 2026.

Respectfully submitted,

______________________________

______________________________

Gregg Roberts

Plaintiff, Assignee of Record and Judgment Creditor, Pro Se

43430 E Florida Ave F-293

Hemet CA 92544

~~951-330-4450~~

~~gregg@legalsupport-sc.com~~

# Exhibit 3

Case 1:25-bk-11688-MB Doc 14-1 Filed 11/07/25 Entered 11/10/25 12:01:25 Desc
CORRECT PDF Page 1 of 25

Gregg Roberts
43430 E Florida Ave F293
Hemet CA 92544
951-330-4450
gregg@legalsupport-sc.com
Assignee of Record and Judgment Creditor, Pro Se

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re Armen Davidian,<br><br>Debtor | Case #1:25-bk-11688-MB<br><br>Chapter 7<br><br>**NOTICE OF HEARING AND OBJECTION, AND OBJECTION TO CLAIMED EXEMPTION IN REAL PROPERTY**<br><br>Hearing Date: Tuesday, January 6, 2026, 11 AM<br>Location: Via ZoomGov (see accompanying notice)<br>Courthouse: 21041 Burbank Blvd, Suite 342 / Courtroom 303, Woodland Hills, CA 91367<br>Judge: Hon. Martin R. Barash |

---

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE, DEBTOR ARMEN DAVIDIAN AND HIS ATTORNEY OF RECORD:**

## NOTICE OF MOTION/HEARING

PLEASE TAKE NOTICE that the above-captioned matter has been scheduled for hearing as a miscellaneous matter before the Honorable Martin R. Barash, United States Bankruptcy Judge, on Tuesday, January 6, 2026, at 11 AM. Movant does not expect this hearing to be an evidentiary hearing. Accordingly, pursuant to Judge Barash's self-calendaring procedures

(https://www.cacb.uscourts.gov/judges/self-calendaring/barash-m-san-fernando-valley), this hearing will be conducted via ZoomGov:

Video/audio web address: https://cacb.zoomgov.com/j/1616378998
ZoomGov meeting number: 161 637 8998
Password: 573177
Telephone conference lines: 1 (669) 254 5252 or 1 (646) 828 7666

Pursuant to LBR 9013-1(f), any response must be in writing and filed with the Court and served on the moving party at least 14 days before the hearing.

See also the *Supplemental Notice Re: Availability of Zoomgov Audio and Video for Remote Appearance*, served and filed contemporaneously herewith.

## MOTION

Gregg Roberts ("Objector"), Assignee of Record and Judgment Creditor of Debtor Armen Davidian ("Davidian"), appearing pro se, hereby objects to Davidian's claimed exemption in the real property located at 8517 Marklein Avenue, North Hills CA 91343 ("the Property").

## INTRODUCTION

Davidian has claimed a homestead exemption in the Property under California Code of Civil Procedure § 704.730. While the homestead laws are intended to protect a debtor's equity in a primary residence from ordinary collection efforts, they do not shield equity that was created or enhanced with funds obtained through fraud, conversion, or other wrongful conduct. Roberts asserts that a portion of the equity claimed as exempt was funded by such ill-gotten gains and therefore should not be protected from creditor recovery. Roberts and Davidian are both entitled

fully litigate the issue of whether any ill-gotten gains even exist. That is a threshold matter to be decided before the amount of ill-gotten gains placed into the homestead can be litigated. Accordingly, Roberts will be filing an adversary complaint pursuant to Federal Rule of Bankruptcy Procedure 7001 to determine whether and to what extent the claimed exemption should be reduced or disallowed. It would not be in the interest of justice to either party for this Court to make a final ruling about such reduction or disallowance through the motion-response-reply-hearing process. Roberts hereby makes a timely objection, but asks that any determination about the claimed exemption be held in abeyance pending the outcome of the adversary proceeding, or to determine the exemption as part of that proceeding.

## MEMORANDUM OF POINTS AND AUTHORITIES

### *I. Introduction*

1. Davidian has claimed a homestead exemption in real property under applicable California law. DE #1, p. 20. Roberts contends that the exemption amount must be reduced to the extent that the equity in the property was created or enhanced through funds wrongfully obtained or otherwise not lawfully owned by the Debtor. Bankruptcy exemptions under 11 U.S.C. § 522 and California Code of Civil Procedure § 704.730 do not protect ill-gotten gains from legitimate creditor claims.

***II. Legal Standard***

*A. Burden of Proof*

2. Federal Rule of Bankruptcy Procedure 4003(c) places the burden of proof on the objecting party to establish that an exemption is not properly claimed. Once the objector produces sufficient evidence to rebut the exemption, the burden of production shifts to the debtor to support the exemption's validity. *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999).

3. However, California state law places the burden of proof on the exemption claimant. ""At a hearing under this section, the exemption claimant has the burden of proof." California Code of Civil Procedure (CCP) § 703.580(b).

4. Moreover, bankruptcy case law holds that state exemption burdens of proof constitute substantive state law, and as such they outweigh federal bankruptcy law. In *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15 (2000) – decided after *Carter, supra* – the Supreme Court found that the burden of proof as to exemptions in bankruptcy follows the underlying substantive state law. Applying *Raleigh*, the Ninth Circuit Bankruptcy Appellate Panel in *Diaz v. Kosmala (In re Diaz)*, 547 B.R. 329, 336-38 (B.A.P. 9th Cir. 2016), confirmed that, "where a state law exemption statute specifically allocates the burden of proof to the debtor, Rule 4003(c) does not change that allocation."

5. See also *Law v. Siegel*, 571 U.S. 415 (2014):

> "[I]n *Latman v. Burdette*, 366 F. 3d 774 (2004), the Ninth Circuit had recognized a bankruptcy court's power to "equitably surcharge a debtor's statutory exemptions" in exceptional circumstances, such as "when a debtor engages in inequitable or fraudulent conduct.... Section 522(o)

> prevents a debtor from claiming a homestead exemption to the extent he acquired the homestead with nonexempt property in the previous 10 years "with the intent to hinder, delay, or defraud a creditor."

Roberts alleges that Davidian's ill-gotten gains were indeed placed into his claimed homestead in the previous 10 years with such intent.

*B. Ill-Gotten Gains Not Exemptible*

6. California's homestead exemption statutes protect equity up to the statutory cap from judgment enforcement but do not extend to equitable interests held by others or to property interests derived from wrongful conduct. Property interests held subject to a constructive trust are excluded from the debtor's bankruptcy estate under 11 U.S.C. § 541(d) and thus are not exemptible:

> Situations occasionally arise where property ostensibly belonging to the debtor will actually be held in trust for another.... *Unicom* analyzed whether funds that would be subject to imposition of a constructive trust under California law are property of the estate pursuant to § 541(a) or are excluded therefrom by § 541(b)(1)and§ 541(d), and answered clearly that such funds are not property of the estate for the purposes of preferential transfer analysis. Having reached this conclusion, *Unicom* then imposed on the debtor the burden to demonstrate that it would be inequitable to impose a constructive trust on the funds. *Id.* at 325. Thus, if property is excludable from the estate because of state constructive trust law, in order to assert control over the property, the debtor must demonstrate that bankruptcy's policy of ratable distribution outweighs the constructive trust beneficiary's right to the *res*.
>
> *In re Golden Triangle Capital, Inc.*, 171 B.R. 79 (B.A.P. 9th Cir. 1994) (page number not available, opinion text not in PACER, https://case-law.vlex.com/vid/in-re-golden-triangle-893429919)

7. California courts do not allow a debtor to cloak ill-gotten gains with an exemption. If "tainted" funds or property obtained by tort (e.g., fraud) are traced into the exempt asset, the exemption yields and equitable remedies (constructive trust/equitable lien) apply:

8. *Duhart v. O'Rourke*, 99 Cal. App. 2d 277 (1950):

> Holding (homestead; fraud-tainted funds destroy exemption): "A homestead may … be successfully attacked … where money fraudulently obtained from him is invested in and constitutes part of the homestead." 99 Cal. App. 2d at 280, fn 1.

9. *Ohio Electric Car Co. v. Duffet*, 48 Cal. App. 674 (1920):

> Holding (fraudulent conveyance proceeds homesteaded; no shelter): Wife who received fraudulently conveyed property "could not make a void title good by filing a declaration of homestead covering the property." 48 Cal. App. at 679.

10. *Parker v. Riddell*, 41 Cal. App. 2d 908 (1940):

> Principle (equity will not preserve fruits of fraud via homestead): court refuses to "preserve to her the fruits of the fraud," noting it was never intended one should "reap 'the fruit of fraud'." 41 Cal. App. 2d at 915-16 (discussing *Kemp* and citing *Duffet*).

11. *Schoenfeld v. Norberg*, 267 Cal. App. 2d 496 (1968):

> Synthesis (catalogues the rule; tracing governs): "Courts have added [to statutory exceptions] those cases where money has been obtained … by fraud and used to acquire the homestead." 267 Cal. App. 2d at 498-99.

12. *Nicolos v. Grover***,** 186 Cal. App. 3d 858 (1986):

> Application (fraudulent conveyance; homestead ineffective in grantee): reiterates—"a homestead may be 'successfully attacked' … where money fraudulently obtained … constitutes part of the homestead" (quoting *Duhart*), and the grantee "could not 'make a void title good by filing a declaration of homestead'" (quoting *Duffet*). 186 Cal. App. 3d at 861-63, 875 (internal pinpoints per *Justia* pagination).

13. Cal. Civ. Code § 2224:

> "One who gains a thing **by fraud** … **is … an involuntary trustee of the thing gained**, for the benefit of the person who would otherwise have had it." This undergirds equitable liens/constructive trusts in the above cases.

***III. Application to This Case***

14. Roberts asserts that funds obtained by Davidian through wrongful means were invested into the Property, thereby inflating the equity claimed as exempt. To the extent such funds can be traced into the property, the resulting equity is subject to an equitable interest in favor of Roberts and cannot be protected by the homestead exemption.

15. The exact amount of equity attributable to such ill-gotten gains cannot be determined without further factual development. Roberts intends to file and prosecute an adversary proceeding under Fed. R. Bankr. P. 7001 to obtain a determination of the extent to which the claimed exemption should be reduced or disallowed, possibly through equitable remedies under state law such as constructive trust in addition to whatever relief is granted by this Court.

*IV. Prima Facie Evidence*

16. Although Roberts argues that he currently bears no burden of proof, he offers the following as *prima facie* evidence for the alleged fraud.

17. Davidian made only the first payment due toward the repayment of a loan from the original judgment creditor, Retail Capital. A second check sent to Retail Capital by Davidian was returned for insufficient funds. *Ex. 1*, State Court Complaint, p. .

18. In the same month that he made a single payment to Retail Capital (electronically), Davidian emptied his bank account by writing a series of large checks for suspiciously round numbers:

ARMEN DAVIDIAN SOLE PROP | Account #[redacted]1868 | March 1, 2019 to March 31, 2019

Checks

| Date | Check # | Amount | Date | Check # | Amount |
|---|---|---|---|---|---|
| 03/06/19 | 1002 | -24,600.00 | 03/12/19 | 1013 | -17,000.00 |
| 03/06/19 | 1003 | -19,170.00 | 03/14/19 | 1014 | -12,000.00 |
| 03/06/19 | 1004 | -35,000.00 | 03/11/19 | 1015 | -8,000.00 |
| 03/07/19 | 1005 | -9,800.00 | 03/14/19 | 1016 | -10,000.00 |
| 03/11/19 | 1008* | -15,000.00 | 03/14/19 | 1017 | -23,500.00 |
| 03/12/19 | 1009 | -10,000.00 | 03/01/19 | 1047* | -10,000.00 |
| 03/14/19 | 1010 | -10,000.00 | 03/01/19 | 1048 | -15,000.00 |
| 03/14/19 | 1011 | -16,000.00 | 03/06/19 | 1049 | -19,000.00 |
| 03/11/19 | 1012 | -22,000.00 | | | |
| | | | Total checks | | -$276,070.00 |
| | | | Total # of checks | | 17 |

*Ex. 2*, Relevant pages of Davidian bank statement from March 2019 provided to Roberts by Davidian's counsel.

19. The total amount of the checks and other withdrawals was $276,070.00, and they reduced Davidian's account balance to precisely zero:

for March 1, 2019 to March 31, 2019

**ARMEN DAVIDIAN SOLE PROP DBA GS CUSTOM BAR & FURNITURE**

Account summary

| | | |
|---|---|---|
| Beginning balance on March 1, 2019 | $110,075.72 | # of |
| Deposits and other credits | 196,783.48 | # of |
| Withdrawals and other debits | -30,789.20 | # of |
| Checks | -276,070.00 | # of |
| Service fees | -0.00 | Ave |
| **Ending balance on March 31, 2019** | $0.00 | 'Incl |

*Id*.

20. The above actions by Davidian are inconsistent with the actions of an honest business person who was investing in his business in hopes of expanding it, or at least sustaining it, and repaying the borrowed funds. Payments to employees or contractors would not have been made in so many round numbers, and an honest businessman would have held back enough funds from the loan to make at least the first several months' worth of payments.

21. The above actions by Davidian are consistent only with the actions of someone who did not intend to repay the loan at the time that he took it out, and with the actions of someone who willfully and maliciously withheld all of the agreed payments after the first one, "without just cause or excuse." See *Carrillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir. 2002).

WHEREFORE, Roberts respectfully requests that this Court:

1. Sustain this objection to the claimed exemption in the Property to the extent of the amounts determined to be ill-gotten gains;
2. Set this matter for such further proceedings as the Court deems necessary, including coordination with the forthcoming adversary proceeding; and
3. Grant such other and further relief as the Court deems just and proper.

Dated: 11/7/2025

Respectfully submitted,

Gregg Roberts

Assignee of Record and Judgment Creditor, Pro Se

**DECLARATION IN SUPPORT**

Gregg Roberts
43430 E Florida Ave F293
Hemet CA 92544
951-330-4450
gregg@legalsupport-sc.com
Assignee of Record and Judgment Creditor, Pro Se

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re Armen Davidian,<br><br>Debtor | Case #1:25-bk-11688-MB<br><br>Chapter 7<br><br>**DECLARATION IN SUPPORT**<br><br>Hearing Date: Tuesday, January 6, 2026, 11 AM<br>Location: Via ZoomGov (see accompanying notice)<br>Courthouse: 21041 Burbank Blvd, Suite 342 / Courtroom 303, Woodland Hills, CA 91367<br>Judge: Hon. Martin R. Barash |

1. I, the undersigned, Gregg Roberts, am over the age of 18 years, competent to make this Declaration, and if called to do so, would testify competently about the matters herein.
2. I am a creditor in the above-entitled case, by virtue of a chain of assignments of judgment filed in the Superior Court of California, County of Los Angeles. The debtor, Armen Davidian, acknowledged my status as a creditor in his filing papers.
3. The exhibits attached to the Objection to Claim of Exemption to which this Declaration is also attached, are true and correct copies of the documents that they purport to be.

Specifically, the Complaint for Damages in the state court case, excerpted as Exhibit 1, was downloaded by myself personally through the state court website.

4. The bank statement excerpts constituting Exhibit 2 were sent to me via email by Debtor Counsel, Sevan Gorginian, Esq. <sevan@gorginianlaw.com> on October 29 at 4:00 PM.

I hereby declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Dated: November 11, 2025

Respectfully submitted,

Gregg Roberts

Gregg Roberts

Assignee of Record and Judgment Creditor, Pro Se

# Exhibit 1

Case 1:25-bk-01088-MB Doc 14-1 Filed 01/21/25 Entered 01/21/25 12:00:24 Desc
CORRECT PDF Page 15 of 25

Mr. Davidian personally guaranteed GS Custom's obligations thereunder. A true and correct copy of the Agreement is attached as **Exhibit A,** and is incorporated herein by reference. Pursuant to the terms of the Agreement, GS Custom received a loan in the amount of $75,600.00 in exchange for a repayment amount of $100,548.00 (the "Repayment Amount").

9. The Agreement provided that, in the event GS Custom defaults on its scheduled repayment obligations under the Agreement, Plaintiff shall be entitled to damages, including but not limited to, amounts equal to the Repayment Amount less any payments received by Plaintiff from GS Custom on the date of default. Further, Defendants agreed that Plaintiff could automatically debit, without notice, any payments and any damages sustained by Plaintiff resulting from Defendants' breach of their respective obligations under the Agreement from GS Custom's business bank account. Likewise, the Agreement provided that in the event of Defendants' default, the net cash proceeds from Plaintiff's exercise of its rights, after deducting all costs and expenses, including reasonable attorneys' fees, would be applied by Plaintiff to the payment of the Repayment Amount.

10. GS Custom made a single payment on March 14, 2019 for $,1523.50, and thereafter defaulted on its next payment on March 21, 2019 when Plaintiff received an insufficient funds notice (NSF) from GS Custom's bank, thus revoking payment to Plaintiff by GS Custom.

**<u>FIRST CAUSE OF ACTION</u>**

**(Breach of Written Agreement)**

11. Plaintiff re-alleges and incorporates by reference each and every allegation contained herein above, inclusive, as though each were fully set forth at this point.

12. On or about March 5, 2019, GS Custom and Mr. Davidian entered into a valid contract with Plaintiff.

13. Under the terms of the Agreement, Defendants were to pay Plaintiff the total amount of $100,548.00.

14. On or about March 5, 2019, Plaintiff funded the loan to Defendants.

15. Plaintiff has performed all its obligations under the Agreement.

16. Defendants defaulted on the Agreement on or about March 21, 2019 by failing to make further payments to Plaintiff, and they continue to remain in default under the Agreement.

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

# Exhibit 2

Bank of America

P.O. Box 15284
Wilmington, DE 19850

Business Advantage
Relationship Rewards

**Customer service information**

1.888.BUSINESS (1.888.287.4637)

bankofamerica.com

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

ARMEN DAVIDIAN SOLE PROP
DBA GS CUSTOM BAR & FURNITURE
7445 LAUREL CANYON BLVD UNIT B
NORTH HOLLYWOOD, CA 91605-3135

# Your Business Fundamentals Checking Relationship Rewards Platinum Honors

for March 1, 2019 to March 31, 2019

Account number: [redacted]1868

**ARMEN DAVIDIAN SOLE PROP DBA GS CUSTOM BAR & FURNITURE**

## Account summary

| | |
|---|---|
| Beginning balance on March 1, 2019 | $110,075.72 |
| Deposits and other credits | 196,783.48 |
| Withdrawals and other debits | -30,789.20 |
| Checks | -276,070.00 |
| Service fees | -0.00 |
| **Ending balance on March 31, 2019** | **$0.00** |

# of deposits/credits: 6
# of withdrawals/debits: 26
# of items-previous cycle[1]: 11
# of days in cycle: 1
Average ledger balance: $0.00

[1]*Includes checks paid,deposited items&other debits*

Business Advantage
Relationship Rewards
PLATINUM HONORS

Congratulations!
You've reached the Platinum Honors Tier

You're now earning even higher rewards and benefits for the business you do. To ensure you get the most out of the program, make an appointment with a Small Business Specialist at **bankofamerica.com/BizAppointment** or call **888.BUSINESS**.

SSM-11-18-0558.B3 | ARS6GTNH

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation

**Bank of America, N.A. Member FDIC and Equal Housing Lender**

**Bank of America**

Your checking account

ARMEN DAVIDIAN SOLE PROP | Account # [redacted] 1868 | March 1, 2019 to March 31, 2019

As of 03/12/2019, your account has earned $3.80 in Cash Rewards this year and $3.80 since enrolling in the Bank of America Relationship Rewards program because of your Bank of America Merchant Services processing.

## Deposits and other credits

| Date | Description | Amount |
|---|---|---|

[redacted]

## Withdrawals and other debits

| Date | Description | Amount |
|---|---|---|

[redacted]

Total withdrawals and other debits -$30,789.20

Bank of America **Business Advantage** LIFE / BETTER CONNECTED®

Your Digital Tip of the Month

Guaranteed bank-to-bank transfers

Pay individuals, vendors and suppliers who bank at other financial institutions — right from Online Banking. Just log in and click the **Transfers I Send** tab, then select **Send Money to Someone or a Business.**

ARH98YHQ | SSM-03-18-0013.B

## Checks

| Date | Check # | Amount |
|---|---|---|
| 03/06/19 | 1002 | -24,600.00 |
| 03/06/19 | 1003 | -19,170.00 |
| 03/06/19 | 1004 | -35,000.00 |
| 03/07/19 | 1005 | -9,800.00 |
| 03/11/19 | 1008* | -15,000.00 |
| 03/12/19 | 1009 | -10,000.00 |
| 03/14/19 | 1010 | -10,000.00 |
| 03/14/19 | 1011 | -16,000.00 |
| 03/11/19 | 1012 | -22,000.00 |
| 03/12/19 | 1013 | -17,000.00 |
| 03/14/19 | 1014 | -12,000.00 |
| 03/11/19 | 1015 | -8,000.00 |
| 03/14/19 | 1016 | -10,000.00 |
| 03/14/19 | 1017 | -23,500.00 |
| 03/01/19 | 1047* | -10,000.00 |
| 03/01/19 | 1048 | -15,000.00 |
| 03/06/19 | 1049 | -19,000.00 |

| | |
|---|---|
| Total checks | -$276,070.00 |
| Total # of checks | 17 |

* *There is a gap in sequential check numbers*

## Service fees

The Monthly Fee on your Business Fundamentals Checking account was waived for the statement period ending 02/28/19. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ◯ $250+ in new net purchases on a linked Business debit card
- ◯ $250+ in new net purchases on a linked Business credit card
- ✓ $3,000+ minimum daily balance in primary checking account
- ✓ $5,000+ average monthly balance in primary checking account
- ✓ $15,000+ combined average monthly balance in linked business accounts
- ✓ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|---|---|---|
| 03/06/19 | Bus Adv Rel Rwds-Wire Fee Waiver of $15 | -0.00 |
| 03/06/19 | Bus Adv Rel Rwds-Wire Fee Waiver of $15 | -0.00 |
| 03/08/19 | Bus Adv Rel Rwds-Wire Fee Waiver of $15 | -0.00 |
| **Total service fees** | | **-$0.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

## Daily ledger balances

| Date | Balance ($) | Date | Balance ($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 03/01 | 84,701.89 | 03/07 | 135,255.32 | 03/12 | 101,463.12 |
| 03/04 | 84,615.32 | 03/08 | 173,459.32 | 03/14 | 28,439.62 |
| 03/06 | 145,055.32 | 03/11 | 128,459.32 | 03/15 | 0.00 |

# SUPPLEMENTAL NOTICE

Case 1:25-bk-11688-MB Doc 34 Filed 09/27/25 Entered 09/29/25 12:01:25 Desc
CORRECT PDF Page 58 of 60


| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>Gregg Roberts<br>43430 E Florida Ave F293<br>Hemet CA 92544<br>951-330-4450<br>gregg@legalsupport-sc.com<br>Assignee of Record and Judgment Creditor, Pro Se<br><br>☐ *Attorney for Movant*<br>X *Movant appearing without an attorney* | FOR COURT USE ONLY |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Armen Davidian<br><br>Debtor(s) | CASE NO.: 1:25-bk-11688-MB<br>CHAPTER: 7<br><br>**SUPPLEMENTAL NOTICE RE: AVAILABILITY OF ZOOMGOV AUDIO AND VIDEO FOR REMOTE APPEARANCE**<br><br>HEARING DATE: January 6, 2026<br>HEARING TIME: 11:00 AM<br>HEARING LOCATION: 21041 Burbank Blvd, Suite 342 / Courtroom 303, Woodland Hills, CA 91367 |
| **Movant:** Gregg Roberts | |

1. The Movant has filed the following written notice or other pleading ("Notice") advising of a hearing to be held in the above-captioned case, on the date and time and at the location indicated above, before the Honorable Martin R. Barash, United States Bankruptcy Judge *(insert name of pleading and, if available, docket number):*

   **NOTICE OF HEARING AND OBJECTION, AND OBJECTION TO CLAIMED EXEMPTION IN REAL PROPERTY**

2. In addition to appearing in person, parties in interest (and their counsel) may appear remotely using ZoomGov audio and video. Information on how to appear using ZoomGov is provided on the following page of this notice.

Case 1:25-bk-01080-MB Doc 14-1 Filed 11/07/25 Entered 11/10/25 12:01:24 Desc
Part 2 of 3 Page 23 of 25

3. Parties in interest (and their counsel) may connect by ZoomGov audio and video using a personal computer (equipped with camera, microphone and speaker), or a handheld mobile device with an integrated camera, microphone and speaker (such as an iPhone, iPad, Android phone or Android tablet).

4. The connection can be initiated by entering the "Meeting URL" into a web browser on any of these devices, provided the device is connected to the Internet. Individuals connecting in this manner will be prompted for the Meeting ID and Password shown below.

5. **Members of the public and the press may only connect to the zoom audio feed, and only by telephone. Access to the video feed by these individuals is prohibited. In the case of a trial or evidentiary hearing, no audio access will be provided. However, members of the public and the press may observe all proceedings in person.**

6. Neither a Zoom nor a ZoomGov account is necessary to participate in or observe the hearing, and no pre-registration is required. The use of ZoomGov is free of charge to participants.

7. The audio portion of the hearing will be recorded electronically by the Court and constitute its official record.

8. **All persons are strictly prohibited from making any other recording of court proceedings, whether by video, audio, "screenshot," or otherwise. Violation of this prohibition may result in the imposition of monetary and non-monetary sanctions.**

9. Any party in interest or counsel that elects to appear remotely by ZoomGov bears the risk of malfunction or disconnection from the hearing.

10. The following is the unique ZoomGov connection information for the above-referenced hearing:

| | |
|---|---|
| Meeting URL: | https://cacb.zoomgov.com/j/1616378998 |
| Meeting ID: | 161 637 8998 |
| Password: | 573177 |
| Telephone: | 1 (669) 254 5252 or 1 (646) 828 7666 |

11. More information on using ZoomGov to participate in this hearing is available on the Court's website at the following web address: https://www.cacb.uscourts.gov/news/zoom-video-hearing-guide-and-training-participants.

Date: November 7, 2025

N/A
Printed name of law firm (if applicable)

Gregg Roberts
Printed name of individual Movant or attorney for Movant

**NOTE: Unless otherwise ordered by Judge Barash: (i) this form should not be used for any trial or evidentiary hearing and (ii) no party or witness may appear remotely for any trial or evidentiary hearing.**

# PROOF OF SERVICE